UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20106-SCOLA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FIDALGIS FONT,

        Defendant.
_____/

## MOTION TO SEVER

Fidalgis Font, through undersigned counsel, hereby files this Motion to Sever pursuant to the Sixth Amendment to the United States Constitution and Fed. R. Crim. P. 12(b)(3)(D) and 14(a), and in support thereof states as follows.

## BACKGROUND

Ms. Font was indicted on February 23, 2021 and charged with one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count One), two counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts Two and Three), and one count of money laundering, in violation of 18 U.S.C. § 1957(a) (Count Five). Co-defendant Martin Valdes is charged with the same offenses plus one count of making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Six), and co-defendant Julio Lopez is charged in the conspiracy (Count One) and with one count of mail fraud (Count Two).

Tellus Clinical Research, Inc. was a clinic owned by Ms. Font that conducted clinical research trials. Ms. Font hired Dr. Martin Valdes as Principal Investigator to oversee the running of the clinical research trials. He was responsible for meeting with patients and collecting data for

the pharmaceutical companies. Dr. Valdes was assisted by study coordinator Analay Rico (indicted separately in S.D. Fla. case no. 21-CR-20158-DLG) who ran day-to-day operations, and co-defendants Duniel Tejeda and Julio Lopez, who worked as study coordinators. The government alleges that neither Dr. Valdes nor anyone else at Tellus was seeing patients, that the patients' identities were used for the studies without their knowledge, that Tellus employees falsified data to submit to pharmaceutical companies, and that the employees and Ms. Font used money meant for the patients for their own personal benefit.

## MEMORANDUM OF LAW

The Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to a fair trial. A defendant is deprived of that right when she is either misjoined with a co-defendant in an indictment, or when her joinder with a co-defendant puts her at risk of being convicted on the co-defendant's evidence, rather than her own. Fed. R. Crim. P. 14(a) provides that a defendant may move to sever the defendant's trials "if the joinder [of defendants in an indictment . . . appears to prejudice a defendant."

There are four general bases for severance: (1) where co-defendants have antagonistic defenses, (2) where one defendant cannot call the co-defendant as an exculpatory witness in the same trial, (3) where inculpatory evidence against one defendant will be admitted but is not admissible against the co-defendant, and (4) where the cumulative evidence will cause "spill-over" prejudice and therefore prevent the jury from making an individualized decision for each defendant. *See United States v. Mosquera*, 886 F.3d 1032, 1041-42 (11th Cir. 2018).

Ms. Font moves to sever from the co-defendants on grounds one, three and four. First, the co-defendants' defenses will likely be antagonistic to Ms. Font's. Second, co-defendant Julio Lopez's pre-trial statement to the government poses a significant danger of prejudice against Ms.

Font. Third, there is a strong likelihood of spill-over prejudice from the evidence against both Julio Lopez and Martin Valdes.

I. **Ms. Font should be tried separately because the co-defendants' defenses will likely be antagonistic to Ms. Font's.**

In *Zafiro v. United States*, 506 U.S. 534 (1993), the United States Supreme Court found that trial courts should assess the evidence and determine whether there is a serious risk that trying defendants together would compromise a specific trial right or prevent the jury from reaching a reliable verdict. The Eleventh Circuit has held that in order to obtain a severance on this ground, the movant must show that the defenses are antagonistic to the point of being mutually exclusive. *See United States v. Liss*, 265 F.3d 1220 (11th Cir. 2001).

Here, there is a strong probability that Dr. Valdes and Mr. Lopez will attack the act element of the fraud, whereas Ms. Font will attack the intent/knowledge element. Dr. Valdes was the principal investigator at Tellus and was therefore the most responsible for the studies and had the most knowledge of what was going on at Tellus. In communications with the FDA and other auditors, Dr. Valdes maintained that everything was being done properly and no fraud was taking place at Tellus, so it is likely that he will maintain the position that he did not commit any fraud whatsoever. Mr. Lopez worked as a study coordinator and managed certain studies. And as discussed further below, Mr. Lopez gave statements to agents and prosecutors regarding his knowledge of what was happening at Tellus, so it would be nearly impossible for him to assert a lack-of-knowledge defense. It makes more sense for Mr. Lopez, like Dr. Valdes, to assert that the actions he took were not illegal.

Meanwhile, the evidence shows that Ms. Font was hardly ever present at Tellus and left the running of the company to Dr. Valdes and alleged co-conspirator Analay Rico. Ms. Font had no knowledge that, as the government alleges, Dr. Valdes or the others were committing fraud at

Tellus. Thus, the defenses are completely opposite to the point of being mutually exclusive—on one side there are two defendants who were present at Tellus who will likely assert they were not committing fraud, and on the other side is Ms. Font, who was not present at Tellus and who will assert that, even if the government's allegations against Dr. Valdes and Mr. Lopez are true, she had no knowledge of any of it. The jury will have to decide not only whether the defendants are guilty or not guilty generally, but they will have to do so while simultaneously having to reconcile (a) who knew of the fraud and/or (b) whether fraud was happening at all. This poses a strong risk that Ms. Font's right to a fair trial, specifically the right to be tried based solely on the evidence against her, will be compromised; the jury will be unable to reconcile the defenses and make individualized determinations. Ms. Font should therefore be tried separately from Dr. Valdes and Mr. Lopez.

## II.     Ms. Font should be tried separately to prevent prejudice resulting from co-defendant Julio Lopez's admissions.

Mr. Lopez was interviewed by federal agents and prosecutors twice, on January 5, 2017 and April 18, 2017. Mr. Lopez made many incriminatory statements which pose a danger of prejudice to Ms. Font. The Federal Rules state that courts should sever defendants when there is a risk that the jury will not be able to separate the evidence against each defendant because there are statements or confessions admissible against the co-defendant. The Advisory Committee Notes to Fed. R. Crim. P. 14 explains:

> "A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant cannot take the stand. Limiting instructions to the jury may not in fact erase the prejudice. While the question whether to grant a severance is generally left within the discretion of the trial court, recent Fifth Circuit cases have found sufficient prejudice to make denial of a motion for severance reversible error."

Fed. R. Crim. P. 14 (citing *Schaffer v. United States*, 221 F.2d 17 (5th Cir. 1955) and *Barton v. United States*, 263 F.2d 894 (5th Cir. 1959));[1] *see also United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987) ("A defendant is entitled to severance, even if he fails to show misjoinder, if the jury would be unable to keep the evidence against each defendant separate").

Courts have recognized that jurors are not perfect and limiting instructions are not always enough. In *Barton*, 263 F.2d at 898, the Fifth Circuit found the district court abused its discretion in not severing the defendants and recognized that the jury instruction—that evidence against each defendant is to be considered separately—is not enough to remedy this harm: "considering the substance and terms of [the co-defendant's] statement, we doubt whether it was at all possible to carry out that instruction. To do so certainly would require twelve minds more perfectly disciplined than those of the average human jurors." *Id*. In *Schaffer v. United States*, 221 F.2d 17, 19 (5th Cir. 1955), the Fifth Circuit reversed the defendant's conviction because the motion for severance should have been granted pursuant to Rule 14 ***even though*** the court issued a limiting instruction because it doubted whether "'it was within the realm of possibility for this jury to limit its consideration of the damaging effect of such statements merely to the defendant against whom they are admitted.'" *Id*. (citing *United States v. Haupt*, 136 F.2d 661, 672 (7th Cir. 1943).

Here, Mr. Lopez's second interview is tantamount to a full confession which will prejudice Ms. Font. In his statement, Mr. Lopez admits that he knew doctors were not present when patients were supposedly seen for studies, that he knew co-conspirator Analay Rico kept the patient diaries (which were supposed to be possessed by the patients) in her desk and would take them home with her, that he knew the audit showed Rico was inputting false data, that he knew Rico was stealing patient identifications, that he knew employees faked vital signs, that he took blood from

---

[1] The Eleventh Circuit recognizes that Fifth Circuit decisions rendered prior to the close of business on September 30, 1981 are binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

employees and Ms. Font and used that blood as if it were patient blood, that he saw Rico throw medication meant for patients away, that he received checks with study information on them even though he was not participating in any studies, and that he gave checks (which were signed by Ms. Font) meant for study patients to other employees.

Mr. Lopez's prior statements would be admissible against him under Fed. R. Evid. 801(d)(2), statements by an opposing party, and if Mr. Lopez testifies these statements may be used as impeachment. But these prior statements are not admissible against Ms. Font because they are hearsay and do not fall under any hearsay exception in Rules 803 or 804. Additionally, if Mr. Lopez does not testify and Ms. Font cannot cross-examine him on these statements, there will be a *Bruton* issue because his statement, at least in part, implicates Ms. Font. *See Bruton v. United States*, 391 U.S. 123 (1968) (holding a defendant is deprived of her Confrontation rights when a non-testifying co-defendant's confession naming her as a participant in the crime is introduced at trial).

The incriminatory nature of these statements would be highly prejudicial to Ms. Font. There is a strong danger that the jury will not be able to mentally compartmentalize the evidence against each defendant and will apply evidence that is admissible only against Mr. Lopez to Ms. Font. Because Ms. Font was the owner of the clinic, the jury may be quick to assign responsibility to Ms. Font for Mr. Lopez's acts and admissions. Ms. Font will be deprived of her right to a fair trial if she is judged based on Mr. Lopez's evidence and not her own. Ms. Font should therefore be tried separately to preserve her Sixth Amendment rights.

### III.  Ms. Font should be tried separately to prevent spill-over prejudice from the evidence against the co-defendants.

In ruling on a motion to sever, "the court must weigh any prejudice the defendants might[2] suffer against the government's interest in the judicial economy of a joint trial," *United States v. Frost*, 61 F.3d 1518 (11th Cir. 1995) *vacated on other grounds*, 520 U.S. 1226 (1997), and should also consider "whether some defendants may be unduly prejudiced by harmful 'spill-over' of evidence against other defendants." *United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986). The Federal Rules protect a defendant's right to a fair trial by emphasizing that a defendant should be convicted on the evidence against her, not based on the evidence against a co-defendant or the jury's emotional reaction to the evidence. *See* Fed. R. Evid. 403, Advisory Committee Notes ("Exclusion for risk of unfair prejudice . . . find[s] ample support in the authorities. 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis . . .").

Spill-over prejudice occurs when "overwhelming evidence of guilt is introduced against a codefendant that would not have been admissible against the defendant in a separate trial." *United States v. Lopez*, 649 F.3d 1222, 1235 (11th Cir. 2011) (citing *United States v. Cross*, 928 F.2d 1030, 1039 (11th Cir. 1991)); *see also United States v. Smith*, 550 F.2d 277, 282 (5th Cir. 1977) (upholding the district court's decision to grant a severance because there was a danger that certain evidence, which would have been inadmissible against Defendant A, could be admitted against Defendant B and therefore prejudice Defendant A); *United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986) (reversing conviction of one of the co-defendants because "very little of the mountainous evidence was usable against her" and therefore she should have been tried separately).

---

[2] Thus, the defendant is not required to show that prejudice is guaranteed to occur at trial.

Here, the evidence that will be introduced against Dr. Valdes and Mr. Lopez is overwhelming. Dr. Valdes's misconduct was the reason the FDA started looking into Tellus in the first place. Menarini Research, who contracted with Dr. Valdes and Tellus, suspected that Dr. Valdes was falsifying data because of inconsistencies and reported him to the FDA. The FDA caught Dr. Valdes in lies multiple times. For example, he told them he saw a patient on a certain date when that patient was out of the country, and almost every person associated with Tellus who was interviewed said that Dr. Valdes never saw patients and would sign charts pre-filled by co-conspirator Analay Rico, yet he told the FDA that he saw the patients. And as stated above, Mr. Lopez practically confessed to the government, and numerous witnesses have provided statements that Mr. Lopez knowingly participated in the fraud by drawing blood from other employees, falsifying data, and making e-diary calls pretending to the patients.

None of this is admissible or relevant to Ms. Font's guilt. In fact, numerous witnesses have stated that Ms. Font was hardly at Tellus and did not supervise what was going on. Many witnesses the government interviewed do not even know who Ms. Font is. The testimony of these witnesses, who would not even testify in a trial against Ms. Font, will create spillover prejudice.

Moreover, trying Ms. Font separately would not unduly burden judicial or prosecutorial resources because the list of witnesses against her would be much shorter and evidence introduced against her significantly lighter. Thus, after weighing judicial economy against Ms. Font's right to a fair trial and the strong likelihood of prejudice, this Court should grant Ms. Font's Motion to Sever.

## CONCLUSION

Ms. Font has the constitutional right to a fair trial under the Sixth Amendment. She cannot have a fair trial where the co-defendants' defenses are antagonistic to her own or where she will

be prejudiced by Mr. Lopez's statements and the mountainous evidence against her co-defendants. For these reasons, this Court should find that a severance is warranted and allow Ms. Font to try her case separate from Dr. Valdes and Mr. Lopez.

WHEREFORE, based on the foregoing, Ms. Font respectfully requests this Court grant her Motion to Sever.

## CERTFICATE OF CONFERRAL

Undersigned counsel has conferred with counsel for the co-defendants and the government. The government opposes this Motion. Counsel for the co-defendants stated that they likely would not oppose the motion but did not give a final answer by the time of this filing.

Respectfully submitted,

*/s/ Marc David Seitles*
Marc David Seitles
Fla. Bar No. 0178284
mseitles@seitleslaw.com

*/s/ Ashley Litwin*
Ashley Litwin
Fla. Bar No. 0096818
alitwin@seitleslaw.com

*/s/ Alyssa M. Altonaga*
Alyssa M. Altonaga
Fla. Bar No. 1025089
aaltonaga@seitleslaw.com

**SEITLES & LITWIN, P.A.**
40 N.W. 3rd Street
Penthouse One
Miami, FL 33128
Tel: (305) 403-8070
Fax: (305) 403-8210

## CERTIFICATE OF SERVICE

I CERTIFY that on October 18, 2022, a true and correct copy of the foregoing was e-filed using CM/ECF.

/s/ Marc David Seitles
Marc David Seitles